**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

**Plaintiff,**

v.                                           CRIMINAL NO. 22-325 (RAM)

JORGE L. ARMENTEROS-CHERVONI,

**Defendant.**

<u>MEMORANDUM AND ORDER</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court are the United States of America's (the "Government") Motions *in Limine* at Docket Nos. 29-32 and defendant Jorge Armenteros-Chervoni's ("Defendant") responses thereto at Docket Nos. 41 and 42. Also pending before the Court is the Government's *Notice of Intent to Use Expert Witness At Trial*, Defendant's opposition, the Government's reply. (Docket Nos. 28; 43; 44). Each motion is addressed in turn below.

**I.   DISCUSSION**

**A. A Records Custodian Is Necessary for the Prison Visitor Logs**

The Government first requests that the Court determine whether a records custodian must testify as a witness before the Government may admit several attorney's visitor logs from the Metropolitan Detention Center ("MDC") in Guaynabo. (Docket No. 29). The Government asserts these logs fall under the business

records exception to the general rule against hearsay, and that they are self-authenticating pursuant to Federal Rule of Evidence 902(11). Id. at 4-5. Additionally, according to the Government, admitting these logs without a witness does not violate the Confrontation Clause. Id. at 5-7.

While the Government's proposal may work with many run-of-the-mill business records, the visitor logs at issue are unique in a meaningful way – *visitors of MDC* supplied the crucial information in the logs, not MDC officials. For this reason, courts have generally required the party seeking to admit prison logbooks to establish that "someone has a duty to verify the information reported." United States v. Reyes, 157 F.3d 949, 952-53 (2d Cir. 1998) (concluding the district court did not abuse its discretion in admitting a logbook as a business record when the testimony presented at trial "was sufficient to show that the logbook was kept under a duty of accuracy"). **Therefore, before admitting the MDC visitor logs at trial, the Government must show that someone had a duty to verify the information reported in the logs**. The Government may either submit an amended certificate of authenticity or present such testimony at trial. The *Motion* at Docket No. 29 is thus **DENIED WITHOUT PREJUDICE.**

**B. Defendant's   Self-Serving   Statements   Are   Generally
   Inadmissible**

The Government next "moves to preclude Defendant from
eliciting any direct or indirect inquiry into the out-of-court
statements he provided in answering questions from MDC guards and
during his interview with FBI agents." (Docket No. 30 at 2). The
Government correctly notes that a defendant's self-serving out-
of-court statements generally constitute inadmissible hearsay. *See*
United States v. Martinez-Mercado, 2022 WL 562894, at *1 (D.P.R.
2022) (barring defendant from: (1) "introducing at trial his own
self-serving statements that violate the rules against hearsay"
and (2) introducing self-serving statements through third party
witnesses) (collecting cases). However, Defendant points to
several exceptions to this general rule and requests that the Court
refrain from deciding this issue until trial. (Docket No. 41 at 2-
3).

The Court recognizes that in certain, very narrow
circumstances, a defendant may elicit his own self-serving out-
of-court statements. *See, e.g.*, United States v. Rivera-Hernandez,
497 F.3d 71, 81 (1st Cir. 2007) (noting that a defendant may admit
self-serving statements under the state-of-mind hearsay exception
if there is, among other requirements, "substantial
contemporaneity of event and statement"). Should one of these
narrow circumstances arise at trial, Defendant may move for

admission of the statement. **However, in the absence of such a showing, the Court will bar Defendant from presenting the jury with his self-serving out-of-court statements**. The *Motion* at Docket No. 30 is **GRANTED**.

### C. Admissibility of Defendant's Financial Documents Will Be Determined At Trial

The Government next requests that the Court allow it to introduce evidence of Defendant's poor financial condition – "specifically credit agency reports and checking account statements" – "for purposes of proving that he had a motive to introduce contraband into MDC on December 22, 2021." (Docket No. 31 at 1, 3). Defendant contends, *inter alia*, that inferring a motive from his financial documents is "baseless and unreasonable" because "there is absolutely no evidence . . . that the crimes charged" or "the factual conduct on which they are based had a financial motive." (Docket No. 42 at 1, 4).

The Government relies on Federal Rule of Evidence 404(b), which "allows evidence of other crimes, wrongs, or acts to be introduced for certain permitted purposes, such as proof of motive[.]" United States v. Whitney, 524 F.3d 134, 141 (1st Cir. 2008) (internal quotation marks omitted). To determine the admissibility of such evidence, the Court must decide whether: (1) "the evidence is specially probative of an issue in the case;" and (2) admission of the evidence violates Rule 403. Id.

In its *Motion*, the Government sets forth a very general theory to explain Defendant's financial motive to commit the alleged crimes. However, it is clear the Court needs more information before it can determine the strength of the Government's proposed theory. At this time, the Court cannot adequately evaluate the probative value of the financial documents, particularly in light of the challenges Defendant raised in his opposition. For instance, evidence of Defendant's high monthly *spending* is not particularly relevant for motive purposes if he was paying his debts on time and from proper revenue sources. Additionally, the length of time between Defendant's last mortgage payment and the commission of the alleged crimes begs the logical question of why Defendant waited several years to commit the alleged crimes if the purpose was to cover his mortgage debts. (Docket No. 42 at 5) (noting the "mortgage payments stopped in July 2015" but the events underlying this case occurred in December 2021). **Therefore, the Court will hold a Rule 104(a) hearing at trial, outside the presence of the jury, to determine whether the Government may offer evidence of Defendant's financial condition under Rule 404(b)**. The *Motion* at Docket No. 31 is thus **HELD IN ABEYANCE.**

### D. **The Equifax and Banco Popular Documents Are Self-Authenticating**

The Government also requests a pretrial ruling concerning the admissibility of an Equifax credit agency report and Banco Popular

checking account statements, which the Government seeks to offer at trial "in order to establish Defendant's motive for attempting to provide contraband into MDC on December 22, 2021." (Docket No. 32 at 2). For the reasons discussed in the preceding section, *see supra* § I.C, the Court will refrain from ruling on the relevance and admissibility of these documents until it has held a Rule 104(a) hearing on the Government's proposed financial motive theory.

However, if the Court determines that the Government may introduce these documents at trial, the Court will **not** require the Government to call a records custodian as a trial witness. Federal Rule of Evidence 902(11) provides that "Certified Domestic Records of a Regularly Conducted Activity" are self-authenticating if the record "meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute[.]" Fed. R. Evid. 902(11). The Government attached to its *Motion* two such certifications from Equifax and Banco Popular that comply with Rule 902(11). (Docket Nos. 32-1 and 32-2). Additionally, Defendant raised no objection to the Government's request. (Docket No. 41 at 2) ("We will not require the government to bring a custodian of records to authenticate the documents at trial."). Therefore, the authenticity of these documents shall be treated as undisputed.

Accordingly, the *Motion* at Docket No. 32 is **GRANTED IN PART** and **HELD IN ABEYANCE IN PART.**

### E. **Mr. Velazquez May Testify About the Introduction of Phones and SIM Cards Into MDC and Their Value**

Finally, the Government seeks to elicit expert testimony from Mr. Velazquez, a Special Investigative Technician at MDC Guaynabo. (Docket No. 28). The Government plans to ask him questions concerning: (1) the introduction of contraband at MDC; (2) the value of items of contraband at MDC; and (3) the ways in which inmates use contraband at MDC. Id. at 1. Defendant requests Mr. Velazquez's testimony be excluded because it is irrelevant. (Docket No. 43). Defendant asserts that "[t]he only issue/fact the jury will be called upon to decide is whether on December [22], 2021, Mr. Armenteros-Chervoni knowingly and voluntarily sought to introduce illegal contraband into MDC Guaynabo," regardless of its value or purpose once brought inside the facility. Id. at 4. In response, the Government contends Mr. Velazquez is an important witness because he will provide the jury with "relevant background information" regarding why SIM cards and cell phones are valuable at MDC. (Docket No. 44 at 3). Additionally, the Government asserts Mr. Velazquez's testimony is relevant and helpful to establish Defendant's knowledge, as "the higher the value of the cell phones, the more likely it is that the Defendant knew the contents of the envelope in which those items were found." Id. at 9.

The Court notes that it previously granted the Government's request, in part because it was unopposed. (Docket No. 33). However, upon reconsideration, and with the benefit of Defendant's opposition, the Court will modify its earlier ruling. **If the Government can establish a sufficient foundation, the Court will allow Mr. Velazquez to testify about: (1) the introduction of phones and SIM cards into MDC and (2) the value of phones and SIM cards at MDC.** The Court agrees with the Government that such evidence would provide relevant background information to the jury and would support the Government's knowledge and motive theories. However, Mr. Velazquez may **not** testify about any other type of contraband, as such testimony would be irrelevant. Additionally, the Court will **not** allow Mr. Velazquez to testify about the ways in which phones and SIM cards are used within MDC, as the Government has not established the relevance of such evidence either. The *Motion* at Docket No. 28 is therefore **GRANTED IN PART AND DENIED IN PART.**

## II.  CONCLUSION

For the foregoing reasons, the *Motion* at Docket No. 29 is **DENIED WITHOUT PREJUDICE;** the *Motion* at Docket No. 30 is **GRANTED;** the *Motion* at Docket No. 31 is **HELD IN ABEYANCE;** the *Motion* at Docket No. 32 is **GRANTED IN PART** and **HELD IN ABEYANCE IN PART;** and the *Motion* at Docket No. 28 is **GRANTED IN PART AND DENIED IN PART.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 2nd day of November 2022.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge